EDWARD J. BARSHAK, administrator, *vs.* RICHARD J. BUCCHERI.

Middlesex. September 11, 1989. - December 6, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Unsound Mind. Practice, Civil*, Complaint, Amendment. *Evidence*, Relevancy and materiality, Expert opinion, Value. *Witness*, Expert. *Value. Contract*, Rescission. *Restitution. Damages*, Rescission.

At the trial of a civil action, the judge properly instructed the jury on the theory of liability raised by the evidence [190-191], and he properly admitted evidence relevant to the issues of certain persons' duty to the plaintiff's decedent in the circumstances [191], the decedent's mental capacity [191], and the value of certain real property [191-192].

In a civil action arising from the breach of a fiduciary duty in a sale of real property, the plaintiff was entitled to damages equal to the difference between what the property was worth and what the defendant had paid the plaintiff's decedent for it, but not "recissory damages" based on the market value of the property at the time of trial, where the defendant had almost immediately sold the property to a bona fide purchaser and received no benefit from any later appreciation in its value after the sale. [192-193]

CIVIL ACTION commenced in the Superior Court Department on October 28, 1983.

The case was tried before *Edward M. Ginsburg*, J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Steven M. Brody* for the defendant.

*Edward J. Barshak*, administrator (*Peter L. Puciloski & Paul E. White* with him).

WILKINS, J. The defendant Buccheri appeals from two judgments, one for $300,000 plus interest entered on a jury verdict and another for almost $3,000,000 based on findings

and rulings by the trial judge on an alternative theory of liability and damages that the parties agreed should be decided by the judge and not by the jury. We affirm the first judgment and vacate the second.

The plaintiff is the administrator of the estate of Lance S. Luther, who died of the effects of alcoholism on February 12, 1983, at the age of thirty-seven. Luther once was a competent businessman. Among the assets he had accumulated was an apartment complex in Woburn, which he had purchased in 1974 and had placed in a real estate trust in 1979. By the spring of 1982, Luther was suffering from serious problems related to his alcoholism. He had been hospitalized for treatment on three occasions in 1981 and twice again in March, 1982. The apartment complex was in physical disrepair and financial disarray, poorly maintained and poorly operated. Neither Luther's cousin Ronald Tocio nor his cousin's friend Harold Allen, Jr., who agreed to help Luther, was competent to operate or maintain the property. They sought assistance and found the defendant Buccheri who investigated the situation and offered to assist Luther in exchange for an interest in the property.

The jury would have been warranted in finding that Buccheri took advantage of Luther, fully knowing of Luther's mental incompetence due to alcoholism, and also knowing that Luther was heavily in debt for utility bills, local property tax bills, and unpaid mortgage obligations. Buccheri arranged for a psychiatrist acquaintance to see Luther so that he could give an opinion that Luther was competent. Buccheri also arranged for a lawyer friend, who had often represented Buccheri, to "represent" Luther, although the lawyer had had no experience in complicated business or real estate transactions. We need not recite all the further evidence that demonstrates Luther's mental incompetence and Buccheri's knowledge of it.

In April, 1982, Luther transferred 51% of his interest in the Woburn property to Buccheri in exchange for Buccheri's agreement to pay outstanding utility and real estate tax bills, to bring the mortgage obligations up to date, to repair and

maintain the premises, to expend $100,000 in repairs and improvements, and to pay Luther $10,000.

In September, 1982, Luther agreed to sell his remaining 49% interest in the trust to Buccheri for $305,800. That sale was completed on December 15, 1982, one week after Luther, against medical advice, had left a hospital where he had been diagnosed as having acute gastroenteritis and acute alcoholic hepatitis associated with cirrhosis. In exchange for his 49% interest, Luther agreed on December 15 to accept less than Buccheri had promised him in September. The new agreement was for $75,000 in cash, a lump sum payment of $100,000 in March, 1983, and $150,000 to be paid proportionately as each apartment unit was sold as a condominium. On December 17, Luther was readmitted to the hospital in a comatose condition. On February 9, 1983, just three days before he died, Luther agreed to accept even less from Buccheri than he had agreed to accept on December 15. Buccheri sold the apartment complex later in the month of February.

We need not recite various additional events or the early procedural history of this case. The plaintiff administrator filed a substitute complaint naming Buccheri and various other persons as defendants. The jury returned verdicts in favor of the others, and the claims against those people are not directly involved before us.

The judge charged the jury that, if Buccheri was liable to the plaintiff, the damages would be the difference between the fair market value of the property Luther transferred, determined at the time of each transfer, and what Luther received from Buccheri. The judge told the jury that, if Buccheri knew that Luther was incompetent, they could find Buccheri liable on the theory that he dealt with Luther when Luther was mentally unable to act in a reasonable manner in relation to the transactions because of a mental illness or defect due to alcoholism. The judge further instructed the jury that, alternatively, they could find liability if they concluded that Buccheri had been in breach of a fiduciary duty to Lu-

ther. It was in response to these instructions that the jury returned the verdict in the amount of $300,000 that is reflected in the first judgment.

The plaintiff's alternative theory of liability and damages was based on a claim that he should be entitled to rescind the transactions with Buccheri but, because the property had been sold, he was entitled instead to rescissory damages, based on the market value of the premises at the time of trial (December, 1987) reduced by certain amounts we shall list subsequently. Buccheri contested the validity of the plaintiff's rescissory damages theory. When, however, the judge suggested that he would admit evidence of current market value, Buccheri became concerned that the jury would be adversely influenced by the then high fair market value of the property, and agreed to let the judge decide the rescissory damages issue. After the first judgment was entered, the judge made findings and rulings that led to the entry of the second judgment that awarded the plaintiff rescissory damages of about $3,000,000 in lieu of the earlier judgment.

We granted Buccheri's application for direct appellate review. We deal first with Buccheri's challenges to the first judgment and reject them. Because we agree with Buccheri's argument that the plaintiff was not entitled to rescissory damages based on the appreciated value of premises at the time of trial, we need not discuss Buccheri's other challenges to the second judgment.

1. We affirm the first judgment against Buccheri.

(a) The judge properly instructed the jury that they could find for the plaintiff on the theory that Buccheri had a fiduciary duty to Luther arising out of a confidential relationship. Buccheri does not claim that the evidence did not warrant such a finding, but rather he claims that this theory of liabiltiy was not included in the plaintiff's substitute complaint. The record shows that the plaintiff raised the theory one week before trial and again on the first day of trial. Buccheri does not argue that he was prejudiced in his defense by the presentation of this theory of liability during trial. Even if we were to accept Buccheri's claim that the allegations of fact in

the plaintiff's substitute complaint did not put Buccheri on notice of this theory, the substitute complaint could properly have been amended to allege a breach of a confidential relationship, and the "failure so to amend does not affect the result of the trial" of that issue. Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974). *Republic Floors of New England, Inc.* v. *Weston Racquet Club, Inc.*, 25 Mass. App. Ct. 479, 488 (1988). See *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 761 (1978).

(b) There was no error in permitting the plaintiff to introduce evidence, and to argue to the jury, that a man in prison referred Allen to Buccheri as a person who could help Luther. This evidence was relevant to the plaintiff's claim that Tocio and Allen were remiss in their duty to assist Luther. Buccheri did not request a limiting instruction when the evidence was admitted.

(c) The judge, acting in his discretion, properly permitted two physicians who treated Luther, but were not psychiatrists, to testify concerning Luther's mental capacity. Whatever limitations apply in a criminal case to the admission of opinion testimony of a physician on the issue of a defendant's criminal responsibility (see *Commonwealth* v. *Schulze*, 389 Mass. 735, 738-739 [1983]), the admission in a civil case of opinion evidence from a nonpsychiatrist physician concerning the mental condition of a patient the physician had treated is within the judge's discretion. *Drake* v. *Goodman*, 386 Mass. 88, 90-91 (1982) (orthopedic surgeon's testimony that patient's problem had psychological rather than physical basis properly admitted).

(d) The judge did not err in permitting an expert witness for the plaintiff to give his opinion of the value of the premises, "assuming the property was in the condition as described by Mr. Buccheri" in his testimony. "Where an opinion is sought upon substantially uncontradicted testimony heard by the witness . . . the question may be asked upon that express or implied assumption without reciting the testimony in the question." *Commonwealth* v. *Russ*, 232 Mass. 58, 73 (1919). It is appropriate for an expert to give an opin-

ion of value based on testimony of an adverse party concerning the condition of the property being valued. The expert was not asked to give an opinion on his view of disputed evidence in the case.

2. We reverse the second judgment that awarded the plaintiff almost $3,000,000 based on the value of the apartment complex at the time of trial ($5,500,000) reduced by the total of (1) the cost of converting the complex from leased apartments to condominium units, (2) the amount of the two mortgages on the property, and (3) the consideration Buccheri paid to Luther or to his estate plus interest. This award greatly exceeds the price at which Buccheri sold the premises in February, 1983 ($1,585,000), and the net proceeds to Buccheri from that sale ($555,329).[1] The plaintiff makes no claim that the February, 1983, sale was not an arm's-length transaction. Nor does he claim that Buccheri received any benefit from the appreciation in the value of the complex after he sold it. The plaintiff argues, however, that Buccheri should be liable for "rescissory" damages, the value of what the plaintiff would have received if rescission of the transactions between Luther and Buccheri could have occurred at the time judgment was entered (reduced by whatever Buccheri or his successor in title had contributed toward the premises).

There is no authority for holding a person in Buccheri's position liable for appreciation in the value of land after the wrongdoer has sold the asset to a bona fide purchaser for value. There are cases allowing rescissory damages where the wrongdoer still holds the property at the time of trial with the result that he must disgorge his gain. See *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass 525, 536-537 (1986); *Judge* v. *Gallagher*, 17 Mass. App. Ct. 636, 642-643 (1984); *Janigan* v. *Taylor*, 344 F.2d 781, 786 (1st Cir.), cert. denied, 382 U.S. 879 (1965); *Lynch* v. *Vickers*

---

[1] This latter amount does not reflect, however, amounts Buccheri had previously paid to Luther which would have to be deducted from the net proceeds of the sale to arrive at the amount of Buccheri's profit from his investment in the apartment complex.

*Energy Corp.*, 492 A.2d 497, 501-503 (Del. 1981). Cf. *Myzel* v. *Fields*, 386 F.2d 718, 744-749 (8th Cir. 1967), cert. denied, 390 U.S. 951 (1968) (not improper to award defrauded plaintiff damages based on value of stock at higher price which was gained by the wrongdoer); *Estate of Rothko*, 43 N.Y.2d 305, 315-322 (1977) (executor who negligently sold assets at less than fair value liable for loss; other executors who had conflicts of interest and potential for financial benefits from consignees of estate assets liable for appreciation damages that reflect value of assets at time of trial). Rescission against a wrongdoer is not possible, of course, if the wrongdoer has sold the land. Damages are not appropriately awarded based on appreciation occurring after the date of sale, if the wrongdoer received no benefit after the date of sale. The theory for which the plaintiff argues, and we reject, leaves an open-ended potential for liability based on events occurring years after the sale of the improperly acquired land.

If a former constructive trustee of land has sold that land, "the right to restitution extends, at the option of the person deprived, either to the value of the land or to the amount recieved therefor." Restatement of Restitution § 130 comment a (1937). The land is to be valued at the time of its sale to a bona fide purchaser. *Id.* at illustration 2.

The plaintiff was entitled to damages based on the greater of (1) the difference between what the property was worth and what he received for it from the wrongdoer (the amount of the jury verdict expressed in first judgment) or (2) the profit Buccheri received on the sale of the premises. This measure of damages will be sufficient to deter persons from cheating people out of their land.

The plaintiff did not ask the judge to charge the jury on the second alternative (disgorged profit) theory of damages. It appears that the amount to be recovered under the two theories would not differ by much.

3. The judgment entered on the jury verdict on December 16, 1987, is affirmed. The second judgment entered on February 11, 1988, is vacated, and a judgment shall be entered

for the defendant Buccheri on the plaintiff's claim for rescissory damages.

*So ordered.*