**CONWAY CHEVROLET–BUICK, INC., Plaintiff, Appellant,**

v.

**TRAVELERS INDEMNITY COMPANY, Defendant, Appellee.**

No. 97–1775.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1997.

Decided Feb. 17, 1998.

N. Jay Shepherd with whom Stephen B. Reed, Boston, MA, was on brief for appellant.

Joseph J. Wadland with whom Stefanie Lempp, Boston, MA, was on brief for appellee.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and DOWD, Jr.,* Senior District Judge.

* Of the Northern District of Ohio, sitting by designation.

COFFIN, Senior Circuit Judge.

Appellant Conway Chevrolet-Buick, Inc. claims that the appellee, Travelers Indemnity Company, breached its contractual duty to provide a litigation defense and violated the Massachusetts statute proscribing unfair business practices, Mass. Gen. L. ch. 93A, in its handling of a third-party suit filed against Conway. The district court granted summary judgment for Travelers. We affirm its holding that there was no breach of the duty to defend, but remand for consideration of the chapter 93A claim insofar as it relates to Traveler's payment of attorney's fees.

### I. *Background*

█ On review of a summary judgment, we present the facts in the light most favorable to the appellant, *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 113–14 (1st Cir.1998). The facts here are for the most part undisputed, however, and our task is primarily to apply the relevant law to them.

On April 21, 1994, a former Conway employee, Ellen Young, filed a lawsuit against the car dealership, its president, Richard Conway,[1] and a management employee, Karen Knight, alleging sexual harassment and wrongful termination. Young contended that a coworker had sexually harassed her, and that she was unlawfully terminated after she complained of the harassment. The seven counts in her complaint invoked various federal and state statutes prohibiting such conduct, and also alleged negligent infliction of emotional distress, invasion of privacy, and assault and battery.

Conway forwarded a copy of the complaint to Travelers, but the insurer refused to defend the lawsuit, explaining in a letter that Conway's policy did not cover the claims asserted. Although the dealership's commercial general liability policy provided that Travelers would assist in defending third-party suits and/or would indemnify the company for damages, it contained several exclusions. No coverage was provided for, *inter alia,* any claims arising out of termination of employment, harassment, or discrimination,[2] or for intentional conduct by the insured.

Young later amended her complaint to include additional allegations of negligence, and the new complaint was forwarded to Travelers in mid-December 1994.[3] After reviewing the changes, Travelers notified Conway that it would participate in the defense as of December 5, 1994, but it reserved the right to withdraw from the litigation should it be determined that coverage did not apply to Young's claims. Travelers also notified Richard Conway and manager Knight that it would not participate in the defense of the complaint on behalf of them as individuals, as the policy did not cover particular employees. In its letter to Conway, Travelers asked the dealership to allocate the costs of the defense among Conway–Chevrolet, Richard Conway as president, Richard Conway as employee, and Knight, and in a later correspondence stated that it would pay only half of the defense costs incurred after December 5, 1994.

On May 23, 1995, the district court granted partial summary judgment for defendants, leaving only counts for violation of federal

---

1. To distinguish between Richard Conway and the business that bears his name, we shall continue to refer to Richard Conway by his full name.

2. The policy's Employment Related Practices Exclusion denied coverage for injury arising out of any termination of employment or "[c]oercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions...."

3. No counts were added to the complaint; and all but Count I remained entirely unchanged. Count I, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, included the new language

"whether intentional and/or unintentional, by disparate impact and/or treatment." The remainder of the new language was added to Section IV of the Complaint, which was labeled "Statement of Claim" and which consisted primarily of the facts underlying the alleged wrongful conduct. Several new paragraphs at the conclusion of that section contained allegations of negligence, including that defendants negligently failed to train employees about sexual harassment, negligently failed to adequately investigate her report of sexual harassment, and negligently hired the alleged harasser. These new allegations, however, were never presented as a separate count.

and state employment and discrimination statutes. Two months later, referring to the court's decision, Travelers wrote to Conway stating that it would no longer participate in the defense of Young's claims.

Young's underlying lawsuit went to trial in November 1995. The district court directed a verdict in favor of the defendants on the sexual harassment claims. The jury returned a verdict against Conway, Richard Conway and Karen Knight on the retaliation claims, and awarded Young compensatory damages of $5,000 and punitive damages of $20,000. The court subsequently denied the defendants' motion for judgment notwithstanding the verdict, and awarded attorney's fees and costs to Young in the amount of $26,941.72.

In response to Travelers' refusal to pay all of the costs related to the underlying lawsuit, Conway filed this action alleging breach of contract and seeking indemnification from Travelers. The dealership further sought treble damages on a claim that Travelers' actions violated Massachusetts laws against unfair and deceptive business practices. The parties filed cross-motions for summary judgment, which the district court resolved in favor of Travelers. This appeal followed. Young's underlying lawsuit is not at issue here.

## II. *Discussion*

### A. *Duty to Defend*

■ Conway claims that Travelers breached its contractual duty to defend because it failed to follow the procedure required under Massachusetts law for withdrawing from the defense of Young's lawsuit. The dealership argues that, once the duty to defend has been established—either by court order, or, as in this case, through the insurer's affirmative acceptance of it—the insurer may not withdraw except in one of the ways outlined in *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass.App. 316, 323–24, 458 N.E.2d 338, 343–44 (1983), or through an equivalent method. Under *Sterilite*, an insurer can "get clear of the duty from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact—as distin-

guished from the appearances of the complaint and policy—the third party cannot establish a claim within the insurance." 17 Mass.App. at 323, 458 N.E.2d at 343. *Sterilite* says that this can be done in the third party action if the insurer has been impleaded, or in a separate declaratory action, where there is a judicial decision that no possibility of coverage for the third-party claim exists. 17 Mass.App. at 323, 458 N.E.2d at 343–44. The opinion goes on to offer this caveat:

> What is not permitted is that an insurer shall escape its duty to defend the insured against a liability arising on the face of the complaint and policy, by dint of its own assertion that there is no coverage in fact: the insurer then stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof.

17 Mass.App. at 324, 458 N.E.2d at 344.

Conway asserts that Travelers did what *Sterilite* prohibits: it withdrew from the case based on its own assertion that the district court's grant of partial summary judgment changed the landscape. Conway emphasizes that the court's action left untouched the new matter in the complaint, and so nothing of significance occurred between the time Travelers agreed to defend the dealership and the time it withdrew its defense. It asserts that, because the judge did not address Travelers' duty to defend, the insurer ended its representation prematurely, and thus improperly.

■ Conway misses the mark in both its general depiction of the law and in its specific application here. Contrary to appellant's view, *Sterilite* does not state that an insurer may never withdraw its defense unless it follows the procedures outlined there. *Sterilite* is applicable only when the allegations in the underlying complaint are "reasonably susceptible" of an interpretation that the liability claim falls within the insurance coverage. 17 Mass. App. at 318, 458 N.E.2d at 340–41; *see also Liberty Mut. Ins. Co. v. SCA Services, Inc.*, 412 Mass. 330, 331–32, 588 N.E.2d 1346, 1347–48 (1992). In such cases, *Sterilite* obliges the insurer not only to undertake the defense but also to continue to defend until it establishes that the potentially covered claims will not in fact fall within the

insurance coverage. As described above, *Sterilite* contemplates that this showing will involve a proceeding or "conclusive" step in the litigation process in which the allegations of the complaint are narrowed to exclude the possibility of coverage that they previously facially suggested. *See* 17 Mass.App. at 323, 458 N.E.2d at 343.

■ If the complaint unambiguously excludes coverage, however, an insurer's decision to undertake a defense temporarily cannot force it to remain involved until it is able to secure judicial permission, or other formal authority, to withdraw. To take the extreme case, a company that erroneously agreed to provide a defense in the face of plain contractual language excluding coverage, and shortly thereafter detected the mistake, could not be bound to obtain a release under *Sterilite*. In such a case, no obligation to defend ever existed, and the procedures outlined in *Sterilite* simply would be inapplicable.

Similarly, here, Travelers stepped in to defend Conway when the litigation included counts for negligent infliction of emotional distress and invasion of privacy—claims that would not inevitably fall within the exclusions for intentional conduct or for claims arising out of termination of employment, harassment, or discrimination. Once those claims

were dismissed by the court's grant of summary judgment, however, only counts falling directly within the policy exclusions remained. The case thus became one in which "the allegations of the third-party complaint [do not] find apparent lodgment in the effective coverage of the policy," *Sterilite*, 17 Mass.App. at 323, 458 N.E.2d 338.[4]

It is irrelevant that none of the added negligence allegations that had brought Travelers into the case were affected by the partial summary judgment. Young's amended complaint did not contain any new counts, but simply had expanded on the bare references to negligence contained in her original filing.[5] Virtually all of the new content was contained in the general Statement of Claim section that preceded the listing of claims, *see* note 3 *supra*, and was incorporated by reference into each of the seven counts. As a result of the expanded negligence language, Travelers read the complaint for the first time as possibly alleging negligent conduct outside the asserted behaviors relating to employment discrimination and sexual harassment.[6]

The court's grant of partial summary judgment, however, left no basis for coverage. The policy's exclusions for claims relating to employment discrimination and harassment

---

4. The cases cited by Conway that adopt the *Sterilite* rule for withdrawal thus are inapposite, since the prerequisite for its use—present in those cases, but lacking here—is the existence of live allegations on the face of the complaint that are " 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms...." *Liberty Mutual Ins. Co. v. SCA Services, Inc.*, 412 Mass. 330, 331–32, 588 N.E.2d 1346, 1347–48 (1992) (quoting *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 146, 461 N.E.2d 209 (1984)). *See, e.g., In re Acushnet River & New Bedford Harbor*, 725 F.Supp. 1264, 1279 (D.Mass.1989) ("The decision [in *Sterilite*] ... clearly sets forth the procedure *which an insurer with a duty to defend* must follow to bring that duty to an end.") (emphasis added); *Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 722 F.Supp. 814, 823, 825 (D.Mass.1988)(Travelers was "liable to defend, and had to sue for a declaratory judgment to avoid this liability" because the conclusion that an exclusion applied was "not clear on the face of the complaint"), *aff'd in relevant part*, 883 F.2d 1092 (1st Cir.1989).

5. The original complaint contained only two brief references to negligence. First, in the Fifth Claim for Relief, labeled "Negligent Infliction of Emotional Distress," Young alleged that defendants "negligently inflicted upon and caused the plaintiff mental anguish and emotional distress, accompanied by physical injuries...." Second, her Statement of Claim charged that defendants "failed and/or neglected to take appropriate steps to address and remedy this prevalent hostile work environment...."

6. For example, in the final paragraph of the Statement of Claim section of the amended complaint, Young alleged that the defendants caused her injury, "whether intentional or unintentional, as the result of the invasion of her rights to privacy, and/or by publication of materials and information that violated her rights to privacy, so as to proximately cause the plaintiff to suffer damages." The original complaint did not allege unintentional conduct relating to the privacy count.

were not limited to intentional conduct, *see* note 2 *supra*, and such claims therefore were uncovered regardless of the actor's state of mind. Indeed, Conway does not challenge the district court's ruling that "the terms of the Policy explicitly exclude the three remaining claims of the Young suit." As the complaint asserted no live counts outside the exclusion, Travelers did not breach its contractual duty to defend when it withdrew.

## B. *Mass. Gen. Laws Ann. Chapter 93A*

Conway also claims that Travelers violated Chapter 93A of the Massachusetts General Laws, which proscribes unfair and deceptive business acts and practices, in two distinct ways: by deliberately breaching its duty to defend, and by arbitrarily paying only half of the legal fees incurred during the period in which Travelers participated in Conway's defense.

■ The first assertion is easily dispatched. Travelers' participation and subsequent withdrawal following partial summary judgment was entirely reasonable and did not constitute a breach of the contractual duty to defend. A fortiori, its handling of the case did not amount to unfair or deceptive business conduct under chapter 93A.

■ The relevant facts concerning the attorney's fee claim are as follows. When it agreed to participate in Conway's defense, Travelers notified its insured that it would provide coverage only for Conway and Richard Conway, in his capacity as president of the company, and would not cover Richard Conway or Karen Knight, as employees.

Based on that division of the lawsuit into two halves, Travelers paid only half of the defense costs for the period of its involvement, amounting to a payment of about $11,500.

Conway objected in writing to the division, asserting that it was arbitrary to view the defense of Richard Conway as split between his role as president and his role as employee, and contending that the defense of Knight, a key management employee, added no separate costs to the defense.

■ Although Conway complained both in the district court and to us that Travelers' approach to funding the defense was so arbitrary and unsupported that it constituted an unfair business practice under chapter 93A, the issue was not discussed in either the district court's opinion or Travelers' brief.[7] We think this issue should be addressed by the district court in the first instance, and thus remand it for consideration by that court.[8]

We therefore affirm the district court's summary judgment for Travelers on the breach of contract claim and on the chapter 93A claim as it relates to the duty to defend. We remand for consideration of Conway's claim that Travelers committed an unfair business practice within the meaning of 93A when it paid only half of the defense costs for the relevant period.

*Affirmed in part, and remanded in part. No costs.*

---

7. Travelers' argument that it did not defend Conway and Knight, as employees, because they were not covered by the policy begs the point. The question is not who is entitled to coverage, but what is the defense cost incurred on behalf of the insured parties, Conway and its president, Richard Conway.

8. We note Travelers' suggestion that Conway's chapter 93A claim should be rejected because the provision on which it is based, Mass. Gen. L. ch.

176D, § 3(9), does not protect businesses. The viability of Conway's unfair practices claim does not turn on whether that provision may anchor a business owner's 93A claim, however, because such a claim need not "be premised on a violation of an independent common law or statutory duty," *Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 729, 532 N.E.2d 660, 664 (1989).