**PREMIER HOMES, INC., Plaintiff,**

v.

**LAWYERS TITLE INSURANCE CORPORATION, Defendant.**

**Civil Action No. 98–11242–WGY.**

United States District Court,
D. Massachusetts.

Dec. 1, 1999.

Stanley N. Wallerstein, Law Office of Stanley N. Wallerstein, Newton, MA, for Premier Homes, Inc.

John L. Harrington, John Connolly, Jr., Law Offices of John Connolly, Jr., Wakefield, MA, for Lawyers Title Insurance Corporation.

Lawrence M. Cohen, United States District Court, United States Courthouse, Boston, MA, for Lawrence M. Cohen, ADR Provider.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION AND BACKGROUND

The Plaintiff, Premier Homes, Inc. ("Premier") moves for summary judgment, as to liability only, on its breach of contract claim. The defendant, Lawyers Title Insurance Corporation ("Lawyers"), moves

for summary judgment on its counter-claim.

The following facts appear free of substantial dispute. Allegations are identified as such. The Kattar family ("Kattar") had long owned property, which included a golf course, in Methuen, Massachusetts. *See* Stipulation as to Agreed Upon Facts ("Stipulation") Ex. B. at ¶ 24. For business development reasons, the Demoulas family ("Demoulas") extended a $2,000,000 loan to Kattar secured by a mortgage on the Methuen property. *See id.* at ¶ 27. When Demoulas needed cash to pay various debts, the family foreclosed and the Methuen property was sold to Skard Realty Trust on April 21, 1994 for $3,1000,000.. *See id.* at ¶ 44. On June 10, 1994, Skard Realty deeded the Methuen property to NNA Associates, which then sold the portion of it not containing the golf course to Premier on February 13, 1997 for $3,200,-000. *See id.* at ¶ 47. On February 13, 1997, the same day Premier purchased the non-golf course Methuen property (the "Property"), it also purchased Owners Title Insurance Policy # 136–00–207883 (the "Policy"), issued by Lawyers. *See* Stipulation at ¶ 2.

At the time of the foreclosure, Demoulas had allegedly assured Kattar that it would convey the golf course back to Kattar once the debts were paid. Demoulas did not do so, however, *see* Stipulation Ex. B at ¶ 48, and Kattar brought suit in the Massachusetts Superior Court on June 9, 1997, alleging the above facts and claiming wrongful foreclosure, misrepresentation, breach of contract, bad faith, civil conspiracy, intentional interference with business relations and unfair and deceptive practices, among other claims. *See* Pls.' Second Am. Compl. & Jury Demand, *Kattar v. Demoulas,* Sup.Ct.Mass. No. 97–3069–C (1997) ("Kattar Compl.") (attached as Exhibit B to Stipulation). Premier Homes was named in the lawsuit as a "Necessary Party." Stipulation at ¶ 3.

The Kattar Complaint sought to have the Property re-conveyed to Kattar. The only allegation in the Kattar Complaint specifically relating to Premier was that "[u]pon information and belief, Premier Homes was not a bona fide purchaser for value." Stipulation Ex. B at ¶ 47. Kattar requested, at all relevant points in the Complaint, that the Court "declare, adjudge and decree that ... the Plaintiffs are the [rightful] owners of the Methuen properties ... and ... [that] the Demoulas Defendants and the Necessary Party Premier Homes, Inc. [be] ordered and directed to reconvey title to the Methuen properties to the Plaintiffs." *Id.* at 20.

Premier provided notice of the claim to Lawyers, who by letter dated June 13, 1997, accepted defense of the claim subject to a reservation of rights. That letter reads, in pertinent part:

> Our acceptance of the defense is under a Reservation of our Rights to Deny Coverage and withdraw the defense in the event the allegations that Premier was not a bona fide Purchaser for Value. [sic][1] In the event the allegations prove true, we further reserve the right to seek reimbursement for fees expended in the defense.
>
> By accepting the defense under a Reservation of Rights, please recognize and understand that we are not agreeing that a defense obligation even exists in light of the allegations.

Stipulation Ex. C.

On November 18, 1997, the Superior Court granted Motions to Dismiss as to a number of Counts in the Kattar lawsuit, but denied a Motion to Dismiss the count that sought reconveyance from Premier on the ground that it was not a bona fide purchasers for value. The Superior Court also denied Premier's Motion for Summary Judgment on December 17, 1997. *See* Stipulation at ¶¶ 10, 11.

On February 4, 1998, Lawyers sent a letter to Premier concerning its status as

---

1. The grammatical error appears in the original.

defense counsel (the "February Letter"). The letter followed several telephone conversations regarding the same topic. The text of the February Letter reads:

> [T]he Company [Lawyers] has again considered its obligations to provide a defense and it has concluded that the Company is not under such a duty.
>
> Accordingly, the Company is tendering the defense of this claim back to the Insured. You indicated during our last telephone conversation that the Insured disagrees with the Company's position and that the Insured would look to the Company to continue to defend this matter to its conclusion. This letter details why we feel that our position is correct. We are hopeful that the Insured will reconsider its position, thereby avoiding the filing of a complaint for declaratory relief to determine our obligations under the policy.

Stipulation Ex. E.

The letter proceeds with a three-page legal analysis concerning the issue of whether the surviving claim against Premier is one covered by the terms of the Policy. It then concludes:

> In summary, having considered the rules of law governing the duty to defend, the allegations contained in the pleadings and the provisions of the policy, we must conclude that the Company is not, and perhaps was not, under a duty to provide a defense in this matter. We respectfully ask that the Insured reconsider its position and advise the Company immediately that the Insured will accept the defense of this matter without further obligation on the part of Lawyers Title Insurance Corporation.

*Id.*

On or about February 11, 1998 (five days after receipt of the February Letter), Premier settled the remainder of the suit with the Kattars. *See* Stipulation ¶ 14, Ex. F.

Premier brought this suit claiming Breach of Contract (Count I) and Violation of Mass.Gen.Laws ch. 93A, § 11. *See* Compl. at ¶¶ 19–26. Lawyers has counterclaimed for a declaration that it was not obligated to continue to defend Premier at the time of the February Letter and, consequently, it is not liable to indemnify Premier for the costs of settlement.

Premier here demands that Lawyers indemnify it for the settlement with the Kattars and pay the defense costs it incurred after February 4, 1998. Lawyers has refused to indemnify, maintaining its position that it no longer had a duty to defend or indemnify after the dismissal of Count I, or alternatively on the grounds that Premier settled the claim without authorization prior to actual withdrawal. *See Affidavit* of Stanley N. Wallerstein Aff. ¶ 6, Ex. 5.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material" fact is one that "might affect the outcome of the suit" under the applicable legal standard. *Id.* at 248, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Effect of the February Letter

Premier claims that Lawyers breached its contract by withdrawing from its defense and terminating coverage via the February Letter. Lawyers claims that the February Letter was merely an offer

to "tender" defense of the case to Premier, and did not constitute a withdrawal. If Lawyers' assertion that it was still defending holds true, then Premier may be said to have settled the claim without written authorization, a violation of the Policy.

A plain and reasonable reading of the February Letter demonstrates that it constitutes a withdrawal from the defense.

The February Letter, quoted above, continues an ongoing discussion between the parties about whether Lawyers is required to continue its defense. It uses the word "tendering" to indicate that it is offering back to Premier control of the defense and invites Premier to assume the defense so as to avoid a suit for declaratory relief. Finally, it asks for Premier to reconsider its position and to advise Lawyers as to whether Premier will accept control of the litigation. Nowhere in this letter is there an assertion that coverage has ceased, or will cease, prior to the hypothetical filing and decision of a declaratory judgment action. Likewise, there is no assertion that defense of the action will continue until Premier responds or until a declaratory judgment is decided. The portion of the letter that analyzes the legal situation is long and emphatic, and the reader is left with the definite conclusion that Lawyers is convinced of its position.

Although the letter is cloaked in the language of a query and purports to seek a response, essentially it is a carefully written letter notifying Premier that Lawyers was withdrawing from defense of the claim. Although written in pleasant terms, the February Letter itself indicates that failure to acquiesce to Lawyers' position would provoke a declaratory judgment action, thus posing the threat to Premier of defending itself against two lawsuits at once. Lawyer's pleasant invitations to "discuss the matter" are insufficient to distract this Court from the letter's true nature—one that offers Premier a single choice between defending itself or going to court to fight for its right of defense. Premier's President acknowledged this ul-

timatum in his deposition: "[The February Letter] was basically saying, you know, either accept it or we will go to court and tell a judge to tell you to accept it." Fahey Dep. at 123. This choice to "accept tender" effectively placed Premier in the exact same position as if Lawyers had more explicitly labeled its actions as "withdrawal." This Court holds as matter of law that the February Letter terminated the defense of the Kattar suit by Lawyers. This conclusion necessarily prompts an analysis of whether Lawyers, in fact, had a duty to defend as of February 4, 1998.

### B. Duty to Defend

Premier argues that Lawyers had a duty to defend it from Kattars' lawsuit under the terms of the Policy. This duty emerges from Section 4(a) of the Conditions and Stipulations of the policy, which states:

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of any insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy . . .

Stipulation Ex. A.

The relevant insuring provisions of the Policy provide insurance against:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in lien or encumbrance on the title;

*Id.* Expressly excluded from coverage under the Policy are:

Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured became an insured under this policy. . . .

*Id.*

■ Lawyers' decision to undertake the defense under a reservation of rights was a permissible course of action and does not operate as a waiver of its right to disclaim coverage at a later date. *See Merrimack Mut. Fire Ins. Co. v. Nonaka,* 414 Mass. 187, 191 n. 6, 606 N.E.2d 904 (1993) ("The purpose of reserving the right to disclaim is to permit an insurer to fulfil its duty to defend without forfeiting any subsequent right to disclaim"); *Salonen v. Paananen,* 320 Mass. 568, 573–4, 71 N.E.2d 227 (1947).[2] The remaining question, therefore, is whether Lawyers' subsequent withdrawal in February, 1998 was a violation of a continuing duty to defend.

■ Under Massachusetts law, an insurer's duty to defend in a particular case is determined by comparing the allegations in the complaint to the policy provisions. *See Simplex Technologies, Inc. v. Liberty Mut. Ins. Co.,* 429 Mass. 196, 197–98, 706 N.E.2d 1135 (1999). "[I]f the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Continental Cas. Co. v. Gilbane Bldg. Co.,* 391 Mass. 143, 146, 461 N.E.2d 209 (1984); *see also Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.,* 91 F.3d 278, 282 (1st Cir.1996); *GRE Ins. Group v. Metropolitan Boston Hous. Partnership, Inc.,* 61 F.3d 79, 81 (1st Cir. 1995); *Liberty Mut. Ins. Co. v. SCA Servs. Inc.,* 412 Mass. 330, 588 N.E.2d 1346 (1992). The "complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." *SCA Servs., Inc. v. Transportation Ins. Co.,* 419 Mass. 528, 532, 646 N.E.2d 394 (1995). The allegations of the complaint, not the insurer's belief as to the merits of the complaint, determine an insurer's duty to defend. *See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7, 13, 545 N.E.2d 1156 (1989). Thus, in Massachusetts, an insurer's duty to defend an insured is more expansive than its duty to indemnify. *See id.* at 10, 545 N.E.2d 1156.

■ The Kattar Complaint sought a declaration that Kattar was the owner of the Methuen property and an order reconveying such property back to Kattar. Lawyers does not dispute that it may have been under an obligation to defend Premier while Count I was still part of the Kattar case. *See* Mem. of Lawyers at 17. Lawyers argues, however, that the duty to defend ceased to exist after dismissal of all

---

**2.** Premier argues that in a June 13, 1997 letter, Lawyers reserved its right to withdraw only "in the event the allegations that Premier was not a bona fide Purchaser for Value." Stipulation Ex. C. In that letter, Lawyers also reserved a right to seek reimbursement if the allegations proved true. Thus the argument is, by implication, that Lawyers reserved the right either (1) to seek reimbursement at the close of the case if any allegations against Premier were true and (2) to withdraw *during* the defense *only* if presented with proof that Premier was not a bona fide purchaser for value but not to withdraw for any other reason. Thus Lawyers is said to have selectively waived its ability to withdraw. Later in the letter, however, Lawyers makes it clear that it was "not agreeing that a defense obligation even exists in light of the allegations." *Id.* Furthermore, a narrow reading of the June letter is unreasonable in light of the well-known insurance practice of defending claims while reserving rights to deny coverage. Although the letter may have been poorly written, it is not reasonable to interpret it in a way that suggests Lawyers was selectively deciding under which particular circumstances it would withdraw and under which circumstances it would recover expenses. Quite clearly, it was reserving its right to withdraw under the policy at any time that it could discern the lack of a defense obligation, whether indicated by the apparent truth of various allegations or by the dismissal of all allegations save those not covered by the Policy.

Kattar counts relating to Premier except for Kattar's Count II. Count II provides:

### Count II

(Declaratory Judgment Against the Demoulas Defendants and the Necessary Party Premier Homes, Inc.)

54. The Plaintiffs repeat and reallege the allegations contained in paragraphs 1–53 herein.

55. The Plaintiffs are entitled to a Declaration and Order of this Court that (a) the Plaintiffs are the owners of the Methuen properties; (b) the Demoulas Defendants and Premier Homes, Inc. be ordered and directed to reconvey the Methuen properties to the Plaintiffs; and [an unrelated claim].

Stipulation Ex. B at ¶¶ 54–55.

In its Prayer for Relief, Kattar requested:

2. With respect to Count II, that the Court declare, adjudge and decree that . . . (a) the Plaintiffs are the owners of the Methuen properties; (b) the Demoulas Defendants and Premier Homes, Inc. are ordered and directed to reconvey the Methuen properties to the Plaintiffs; and [an unrelated request].

. . .

9. With respect to Counts I and II, that the Court approve a Memorandum of Lis Pendens and enter a declaration that the Demoulas Defendants have wrongfully deprived the Plaintiffs of their right, title and interest in and to the Methuen properties, that the Necessary Party Premier Homes, Inc. is not a bona fide purchaser, and award equitable relief enforcing such right, title and interest.

*Id.* at 20–21.

Lawyers argues that after the dismissal of Count I, the only allegation remaining against Premier was that it "was not a bona fide purchaser for value." *Id.* at ¶ 47. A bona fide purchaser is "one who has purchased property for value without any notice of any defects in the title of the seller" or "[o]ne who pays valuable consid-

eration, has no notice of outstanding rights of others, and acts in good faith." Black's Law Dict. 161 (5th ed.1979). Thus Lawyers argues that Kattar's remaining claim against Premier must imply that Premier either had notice of the defects in the title (e.g., the wrongful foreclosure) or failed to pay valuable consideration. Lawyers argues that these allegations fall subject to the exclusions in the Policy for defects "created, suffered, assumed or agreed to by the insured claimant." Stipulation Ex. A at ¶ 3(a).

Lawyers' argument is unsound. The Count II of the Kattar complaint and its accompanying Prayer for Relief, both quoted above, envision a potential loss of title by Premier caused by the actions of third parties. Count II is directed at both the Demoulas Defendants and Premier, indicating that it is grounded in the alleged misrepresentations or breaches of contract which constitute the bulk of the Kattar litigation. Unlike circumstances in cases cited by Lawyers, the Kattar complaint does not consist of an allegation aimed solely at the insured for its own conduct. *See, e.g., Transamerica Title Ins. Co. v. Alaska Fed. Savings and Loan Ass'n of Juneau,* 833 F.2d 775, 776 (9th Cir.1987) (insured "created" the underlying claims); *NPH Realty, Ltd. v. Ticor Title Ins. Co.,* No. 96–11197 (D.Mass. Feb. 28, 1997) (O'Toole, J.) (alleging inequitable collusion); *Safeco Title Ins. Co. v. Moskopoulos,* 116 Cal.App.3d 658, 665, 172 Cal.Rptr. 248 (1981) (alleging intentionally tortious conduct). Although Kattar alleged that Premier was not a bona fide purchaser for value, Count II does not rely solely on that allegation in order to demand declaratory judgment. Count I (among others) was dismissed by the justice of the Superior Court without opinion, leaving the possibility that allegations other than those directly against Premier would continue to jeopardize Premier's title.

Furthermore, it does not make sense to read Count II as solely a claim attacking Premier's status as a bona fide purchaser

for value. Such an attack properly would require the court to convey the land back to NNA Associates, the partnership of Demoulas children, rather than to Kattar, because it would effectively rescind Premier's purchase. Since Count II requests that the property be reconveyed to the *Plaintiffs*, not to the entity from which Premier purchased the land, its basis must be broader than a mere allegation that Premier was not a bona fide purchaser for value. Some other allegation must exist which could place the property back into the hands of Kattar, not NNA.

The allegation that Premier was not a bona fide purchaser for value is most likely not intended to act as a separate claim against Premier (which, after all, was a "Necessary Party," and not a defendant) but rather to fulfill a legal requirement in the claim against *Kattar*. It is likely that the Complaint was drafted with the idea in mind that "specific performance is impossible where the party to the contract has sold the property to one who is free from all equities." *Halsell v. Renfrow*, 202 U.S. 287, 292, 26 S.Ct. 610, 50 L.Ed. 1032 (1906); *see also Barshak v. Buccheri*, 406 Mass. 187, 193, 547 N.E.2d 23 (1989) ("Rescission against a wrongdoer is not possible, of course, if the wrongdoer has sold the land"). Thus, Kattar's Complaint may have included an allegation relating to Premier's status as a bona fide purchaser for value so as to allow an equitable order for recission, rather than an action solely for damages against Demoulas.

This begs the question, however, whether Premier's title could ever have been in jeopardy absent its own improper conduct during conveyance. While it is true that a subsequent bona fide purchaser's title is protected from fraud that occurs during the prior conveyance, that rule is simply a legal principle which Lawyers could have and should have used in its defense of Premier's title. Although a valid legal protection for the title thus seems to exist, that apparent protection does not mean

that the Kattar litigation did not actually threaten Premier's title.

An apparent obstacle to a reconveyance would be that Premier was a bona fide purchaser for value and could not be held subject to an equitable order to reconvey its legitimate property to anyone. But that is a legal condition of the remedy sought, and although it may prove legitimate, it is exactly the role of insurance counsel to raise such legal defenses to the threat to Premier's title. It is not surprising that Kattar alleged exactly the opposite, in order to open the door to recission. It is hollow opportunism for Lawyers to argue that Premier should lose the right of defense merely because Kattar anticipated this problem and pled the opposite before Premier could induce it to defend the title.

■ Although not precisely drafted, Kattar's allegations are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy. *See Continental*, 391 Mass. at 146, 461 N.E.2d 209. Kattar's attempt to reclaim Premier's property may have been doomed to failure by virtue of the bona fide purchaser rule, but that does not relieve Lawyers from defending the suit and using that very rule to prevail. It is not the belief of any party as to the eventual outcome of the suit that determines a duty to defend, but rather whether the complaint is reasonably susceptible of an interpretation that it threatens an insured interest. *See Boston Symphony Orchestra*, 406 Mass. at 13, 545 N.E.2d 1156. The duty still exists even if there appears to be a strong legal principle protecting title as vested. *See Winnacunnet Coop. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 84 F.3d 32, 36 n. 6 (1st Cir. 1996) ("[A]n insurer may be obligated to defend a groundless lawsuit that ultimately does not give rise to indemnification."); *A. Johnson & Co., Inc. v. Aetna Cas. and Sur. Co.*, 933 F.2d 66, 72 (1st Cir.1991) ("Even a complaint which is legally insufficient to withstand a motion to dismiss gives rise to a duty to defend if it shows an

intent to state a claim within the insurance coverage."); C.T. Drechsler, "Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend," 50 A.L.R.2d 458 § 1 (1956) ("[I]nsurer is bound to defend the insured against all actions brought against him on the allegation of facts and circumstances which are covered by the policy even though such suits are groundless, false, or fraudulent."); 44 Am.Jur.2d *Insurance* § 1409 (1982). Nor should the valuable security against the expenses and anxiety of litigation provided by a policy obligating the insurer to defend be lost on the basis that the litigation is unlikely to succeed due to a legal obstacle standing in the way of equitable remedy. The suit is still a threat to the insured interest.

■ In a situation in which counts in a complaint have been dismissed, an insurer may withdraw from defense of an insured's case once "the complaint unambiguously excludes coverage." *Conway Chevrolet–Buick, Inc. v. Travelers Indem. Co.,* 136 F.3d 210, 214 (1st Cir.1998). This is not such a situation, however. The First Circuit in *Conway* made clear that such a withdrawal is to take place only when the remaining claims are quite clearly excluded from coverage, such as when an insurer "erroneously agreed to provide a defense in the face of plain contractual language excluding coverage, and shortly thereafter detected the mistake," or when "only counts falling directly within the policy exclusions remained." *Id.* The claims in the Kattar complaint are not so easily excluded from the scope of the policy because they include vague, multi-faceted claims against several parties. Ultimately, these claims seek to deprive Premier of title by virtue of conduct by third parties, precisely the type of threat envisioned by title insurance.

The standard articulated in *Conway* is intended to compliment the normal withdrawal mechanism in Massachusetts, articulated in *Sterilite Corp. v. Continental Cas. Co.,* 17 Mass.App. 316, 458 N.E.2d

338 (1983). The *Sterilite* mechanism allows an insurer to withdraw "from and after the time when it demonstrates with conclusive effect on the third party that as matter of fact—as distinguished from the appearances of the complaint and policy—the third party cannot establish a claim within the insurance." *Id.* at 323, 458 N.E.2d 338. Kattar's Count II directed against the title of the Property is "reasonably susceptible" of an interpretation that the liability falls within the insurance coverage, thus mandating the use of the *Sterilite* mechanism. *See Conway,* 136 F.3d at 214 n. 4. If Lawyers believed that the sole allegations against Premier made it legally impossible for Kattar to threaten Premier's title in a manner consistent with coverage under the Policy, it should first have made such a showing in order for it to withdraw properly. Lawyers' unilateral withdrawal from the defense, without the mandatory showing, was improper.

## C. Unauthorized settlement

Section 9(c) of the Conditions and Stipulations of the policy provides:

> The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

Stipulation Ex. A.

■ Lawyers, in its motion for Summary Judgment, argues that Premier's decision to settle the Kattar matter without Lawyers' written consent was subject to § 9(c) of the Policy. Under the circumstances, however, Premier was entitled to settle the claim on its own and to obtain reasonable indemnity. "An insurer who unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract, including liability for the expense of a reasonable settlement of the underlying claim as well as the cost of the defense to that time." *Jefferson Ins. Co. of New York v. National Union Fire*

*Ins. Co. of Pittsburgh, Pa.*, 42 Mass.App. Ct. 94, 104, 677 N.E.2d 225 (1997) (citing *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 762–764, 610 N.E.2d 912 [1993] ); *Berke Moore Co. v. Lumbermens Mut. Cas. Co.*, 345 Mass. 66, 70–71, 185 N.E.2d 637 (1962).

Premier is entitled to recover the amount of a reasonable settlement with Kattar and reasonable attorney's fees and costs in the defense and settlement. *See Polaroid*, 414 Mass. at 761, 610 N.E.2d 912. As Premier has moved for summary judgment on its Count I as to liability only, the question of reasonableness and the determination of liability under Premier's Count II are saved for another day.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the motion for partial summary judgment of plaintiff Premier on Count I of its Complaint (breach of contract) as to liability only [Docket # 18], and **DENIES** the motion for summary judgment of the defendant Lawyers [Docket # 14]. Furthermore, this Court declares, with respect to Lawyers' Counterclaim, that Lawyers was under a duty to defend Premier until the resolution, by judicial action or settlement, of insured threats to Premier's title.