■ MITSUHIRO HONZAWA et al., Appellants, v HIROKUNI HONZAWA et al., Respondents. [701 NYS2d 411] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered April 27, 1999, which dismissed the complaint, unanimously modified, on the law, defendants' motion denied, the complaint reinstated as against the corporate defendants (including their individually named principals) and the law-firm defendant Wien, Malkin & Bettex, L. L. P. (including its individually named associates), plaintiffs' cross motion for pro

hac vice admission of counsel reserved for determination by the IAS Court, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered March 22, 1999, which granted defendants' motion to dismiss and denied as moot plaintiffs' cross motion, unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

This case arises out of a bitter family dispute of long standing over control of the Takara corporate entities. Plaintiff Mitsuhiro Honzawa was sued in New York and several international forums for allegedly converting $2,346,841.28 in corporate funds. The evidence was based in large measure on hearsay. Liechtenstein was chosen as one of the international forums apparently because of its liberal rules on the admission of hearsay evidence. The Takara corporate defendant herein attached $2.24 million of Mitsuhiro's funds in connection with the Liechtenstein action and another $245,480.76 in connection with the New York action. After removal of the latter case to the United States District Court for the Southern District of New York, based on diversity jurisdiction, the local attachment was vacated on Mitsuhiro's motion when the court found no showing of any likelihood that corporate funds had been converted. Mitsuhiro also counterclaimed for judgment consistent with the court's finding on the attachment vacatur, and for sizable legal expenses. Extended settlement negotiations ensued, but Mitsuhiro declined any dismissal of the complaint (even "worldwide") that might be conditioned on withdrawal of his counterclaim for attorney's fees. The case went to trial in 1997, and resulted in judgment for Mitsuhiro, both on Takara's claim and Mitsuhiro's counterclaim. Judge John Sprizzo further ruled that the case was "appropriate not only for Rule 11 sanctions but a sizable award of damages resulting from the improvident seeking of injunctive relief and the continuation of this application long after it had been reasonably clear to a lawyer of ordinary intelligence and ability that the case should have been dropped much sooner."

Rule 11 of the Federal Rules of Civil Procedure sets forth the process for determining appropriate sanctions for an attorney's misrepresentation to the court. Judge Sprizzo allowed the parties to negotiate these terms. Under the guidance of a Federal Magistrate, the parties were able to settle Mitsuhiro's claim for legal fees and expenses, but were unable to reach a settlement on sanctions. Accordingly, Magistrate Peck awarded legal fees of $550,000, without prejudice to an action by Mitsuhiro in the nature of malicious prosecution, for recovery in excess of $550,000. Judge Sprizzo's final judgment, in May 1998, did not

specifically mention the possibility of future litigation for sanctions, but did refer to the transcripts of his and Magistrate Peck's decisions, both of which touched upon such recovery.

The instant action was brought by Mitsuhiro and his wife in June 1998, against the Takara antagonists and the three law firms that represented them in the underlying Federal action, seeking $500 million in compensatory damages and $5 billion in punitive damages on each cause of action for malicious prosecution and abuse of process, and $5 million for loss of consortium. Plaintiffs appeal the dismissal of this action.

The elements of the tort of malicious prosecution include initiation or continuation of a proceeding despite the lack of probable cause, termination of that proceeding favorable to the party there sued and now aggrieved as plaintiff, and a showing of malice in the pursuit of that underlying proceeding (*Colon v City of New York*, 60 NY2d 78, 82). It has also been held that such a cause of action additionally requires a showing of some special damage to, or interference with, personal or property rights beyond the damages normally attendant upon being sued (*Campion Funeral Home v State of New York*, 166 AD2d 32, *lv denied* 78 NY2d 859).

All of these elements have been satisfied here. The Takara defendants initiated and continued the underlying action (*inter alia*) which was concluded favorably to Mitsuhiro, malice can be inferred from the history of bitter relations between the parties, and special injury can be traced to the attachment of Mitsuhiro's bank accounts, both here and in Liechtenstein. Regarding the element of lack of probable cause, the 1995 attachment of Mitsuhiro's bank account, following service of the complaint, was supported by an affidavit of defendant (herein) Yukihiro Honzawa, wherein he stated that he was "fully familiar with the facts" of Mitsuhiro's conversion of $2,346,841.28 in Takara funds to his own personal use. The conversion allegedly took place in a series of five transactions during 1978-1979. In his 1996 deposition, Yukihiro conceded that at the time of the alleged conversion, he would have been 10 or 11 years old. The attorney who prepared that affidavit for the 27-year old Yukihiro in 1995 should have known that the affiant would have been nothing more than a precocious youngster at the time of the events of which he assertedly was personally knowledgeable. This is the kind of "vindictive" act, bordering on "malicious abuse of prosecution," that warranted rule 11 sanction, according to Judge Sprizzo. Whether it rises to the level of fraud sufficient to rebut the presumption of probable cause is at least a question of fact, and this claim should not

have been dismissed before trial. At no time did Mitsuhiro, in the course of settlement negotiations, relinquish this right of action suggested in the resolution of the Federal litigation.

The IAS Court dismissed plaintiffs' cause of action for abuse of process on grounds of Statute of Limitations, for failing to file the complaint within one year of the attachment in question (CPLR 215 [3]; *Beninati v Nicotra*, 239 AD2d 242). This was error. Examination of the record reveals that the Takara parties filed their complaint against Mitsuhiro in New York on November 17, 1995, at which time they attached, in partial satisfaction, a $250,000 bank account Mitsuhiro maintained at the local branch of Bank of Tokyo Trust. Five days later, a virtually identical claim was filed in Liechtenstein, accompanied by a $2.24 million attachment there. On December 23, 1996, after the New York action was transferred to Federal court, Judge Kimba Wood vacated the New York attachment upon the Takara parties' failure to offer any evidence demonstrating the possibility of success on the merits. On June 12, 1997, Judge Sprizzo ordered the escrow of the more than $2 million that had been attached in Liechtenstein, upon transfer of that action to New York pursuant to the stipulation of the parties. Those funds were not released to Mitsuhiro until the last day of trial, in October 1997. Mitsuhiro's complaint in the instant action was filed on June 17, 1998.

The time within which to commence an action is not to be counted from December 1996, when Judge Wood vacated the $250,000 attachment, nor from June 12, 1997, when Judge Sprizzo's order initiated the escrow of the Liechtenstein attachment here in New York. The IAS Court should have been guided by letters from Mitsuhiro's counsel to the Takara defendants' counsel, dated July 22 and August 9, 1997, demanding release of the Liechtenstein funds, citing both Judge Wood's vacatur of the earlier attachment on the merits and defendants' own admission of insufficient admissible evidence to sustain the attachment, and threatening a lawsuit for refusing to release the Liechtenstein funds despite the absence of probable cause to hold them. Under these circumstances, the complaint, filed in June 1998, was timely.

With respect to the conduct of a law firm, caution must be exercised in imposing liability for allegedly overzealous representation of a client. Here, the Takara entities received tenacious and energetic representation from each of their three legal counsel: the firm of Wien, Malkin & Bettex, L. L. P., which filed Takara's New York complaint, initiated the New York attachment and prosecuted the initial phases of the claim; the

firm of LeBoeuf, Lamb, Greene & MacRae, L. L. P., which pursued the action from discovery through the dispositive motion and pretrial order phases into the commencement of trial; and the firm of Menaker & Herrmann, L. L. P., which handled the trial and post-trial proceedings on Takara's behalf. But zealous representation has its limits. A lawyer must not overstep those limits by creating or using false evidence, or assisting a client with the aid of evidence he knows to be false (Code of Professional Responsibility DR 7-102 [22 NYCRR 1200.33]). The Wien Malkin firm would have arguably transgressed those disciplinary standards by taking and utilizing the affidavit of Yukihiro Honzawa in support of the attachment, when it knew or should have known that Yukihiro could not have had personal knowledge of the matters therein contained. Accordingly, it was error to grant the motion to dismiss with regard to the Wien Malkin firm. Concur—Sullivan, J. P., Wallach, Rubin, Saxe and Friedman, JJ.