GLOBAL NAPS, INC., Frank T. Gangi, William J. Rooney, Jr., and Janet Lima, Plaintiffs,

v.

FEDERAL INSURANCE COMPANY, Defendant.

No. Civ.A. 00–12430–PBS.

United States District Court, D. Massachusetts.

July 18, 2002.

**62**

Salvador M. Llach, Martin C. Pentz, Nutter, McClennen & Fish, LLP, Boston, MA, for plaintiffs.

Robert P. Powers, Melick, Porter & Shea, LLP, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Plaintiff Global NAPs, Inc. ("Global NAPs")[1] brings this diversity action against Federal Insurance Company ("Federal Insurance") to recover the litigation expenses incurred in its defense of a complaint filed by New York Telephone and New England Telephone and Telegraph Company (the "Verizon" action).

Federal Insurance moves for summary judgment on the ground that Global NAPs' insurance policy does not cover the Verizon action because the action did not include a claim for malicious prosecution. Global NAPs has filed a cross-motion for partial summary judgment concerning Federal Insurance's duty to defend, while leaving for later its duty to indemnify.

After hearing, the Court *ALLOWS* Federal Insurance's motion for summary judg-

ment and *DENIES* Global NAPs' cross-motion for partial summary judgment.

### FACTS

The following facts are undisputed except where otherwise stated.

#### A. The Players

Global NAPs and Verizon are telecommunications carriers that sell telecommunications services to customers in Massachusetts and New York, respectively. The Telecommunications Act of 1996 ("TCA") requires "incumbent local exchange carriers" to permit "competing local exchange carriers" to interconnect with the incumbent telephone network, allowing the customers of each carrier to connect to the customers of the other. *See* 47 U.S.C. §§ 201 *et seq.* Typically, although costs are incurred by exchange carriers operating where a call terminates, only the carrier in whose area a call originates bills a customer for the phone call. As a result, exchange carriers commonly enter into "reciprocal compensation" arrangements pursuant to the TCA. Under these arrangements an incumbent local exchange carrier is required to compensate a competitive local exchange carrier for telephone calls originating with the competitor's customers and terminating with local customers, i.e. exchange carriers are compensated for costs incurred from phone calls they do not bill to their customers. Global NAPs and Verizon entered into such reciprocal compensation arrangements.

#### B. The Public Service Commission Complaint

On September 7, 1999, Global NAPs filed a complaint against Bell Atlantic–New York (now "Verizon"), before the

---

**1.** The other plaintiffs are officers and/or employees of Global NAPs.

New York Public Service Commission ("New York PSC"), seeking a declaration that Global NAPs was entitled to payments being withheld by Bell Atlantic–New York. The dispute involved compensation for Internet-bound traffic. Global NAPs asserted that calls to Internet Service Providers ("ISPs") were subject to the same compensation as non-Internet bound calls under the terms of the Verizon–Global NAPs reciprocal compensation arrangements. Verizon responded that due to the nature of Internet bound traffic, calls to ISPs were not subject to compensation, or, in the alternative, any compensation should be smaller than that for non-Internet bound traffic, which is more expensive.

Global NAPs asserted two claims before the New York PSC: (1) the parties' disagreement over the appropriate per-minute rate to apply to Internet-bound traffic originating from Verizon to Global NAPs (either fixed at the same rate as non-Internet bound traffic or subject to tariff fluctuations); and (2) the parties' disagreement regarding the actual number of minutes exchanged between them.

On February 11, 2000, Global NAPs formally withdrew from consideration one of its claims for relief—the disputed number of minutes of Internet-bound traffic. The other claim, concerning the appropriate rate to apply, was later decided in favor of Global NAPs: the New York PSC held that the same rate should apply to both Internet and non-Internet bound traffic.

### C. The Federal Action

On May 8, 2000, Global NAPs was named as a defendant in a proceeding filed by Verizon under the name *New York Tel. Co. and New England Tel. & Tel. Co. v. Global NAPs, Inc., Frank T. Gangi, William J. Rooney, Jr., and Janet Lima,* Civil Action No. 00–CIV–2650, in the United States District Court for the Eastern District of New York. Verizon also sued plaintiffs Frank T. Gangi and William J. Rooney, officers of Global NAPs, and plaintiff Janet Lima, an employee.

Verizon sought damages not merely for alleged billing improprieties, e.g. excessive or "phantom" minutes of use ("MOUs"), but also for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and the Massachusetts Deceptive Trade Practices Act, Mass.Gen.Laws ch. 93A.

The RICO counts and the chapter 93A count of the Verizon action are grounded upon allegations of a series of "predicate acts" by Global NAPs relating to the compensation dispute. One of the predicate acts was Global NAPs' filing of the administrative complaint against Verizon before the New York PSC. The Verizon complaint alleged:

> Defendants' prosecution and maintenance of the New York PSC proceedings relating to the number of MOUs involved was itself a fraud, designed to confuse Bell Atlantic and conceal the nature of Defendants' racketeering activity. Gangi and Rooney in particular submitted papers, and directed [Global NAPs] counsel to submit papers and take positions, that Defendants knew were false and misleading. (¶ 84).

\* \* \* \* \* \*

> On or about September 3, 1999, Rooney prepared a complaint for filing with the New York PSC in which [Global NAPs] demanded payment for reciprocal compensation pursuant to the invoices it had sent to Bell Atlantic. (See Exhibit 11).... In that complaint, Rooney claims that [Global NAPs] is entitled to the full amount of the unpaid invoices, even though he knew that approximately one half of the amount sought arose

from the Defendants' criminal fraud involving phantom MOUs, and not from any actual use by or non-fraudulent charge to Bell Atlantic. Rooney wrote and sent the complaint—and thereby commenced the proceeding—with the intention of concealing the fraud from Bell Atlantic, so that GNAPs could continue to collect reciprocal compensation while the MOU dispute dragged on, and with the intention of persuading the PSC to become an unwitting accomplice to Defendants' Phantom MOUs Scheme. (¶ 131).

\*       \*       \*       \*       \*       \*

An additional aspect of the scheme was to conceal the nature of the fraud and thereby prolong its life through the baseless MOU claim before the New York PSC. The papers submitted by Rooney and the other Defendants in that matter were further incidents of mail and wire fraud to this end. (¶ 143).

The complaint did not have a count asserting the tort of malicious prosecution, and never used the term "malicious prosecution."

**D. The Insurance Policy**

Federal Insurance issued to Global NAPs a commercial general liability insurance policy which provides that it will "pay damages the insured becomes legally obligated to pay by reason of liability imposed by law ... for ... personal injury caused by an offense committed during the policy period." The policy gives Federal Insurance "the right and duty to defend any insured against a suit seeking damages for ... [such] personal injury." "Personal injury" is defined as "injury, other than bodily injury" arising out of certain enumerated "offenses committed in the course of [Global NAPs'] business," including "malicious prosecution."

By letter dated May 16, 2000, the plaintiffs gave notice to Federal Insurance of the Verizon action. In that same letter, plaintiffs requested a defense and indemnification under the Federal Insurance Policy. On June 8, 2000, Federal Insurance declined coverage under the Federal Insurance Policy for the Verizon action. In the disclaimer letter, Federal Insurance took the position that "the allegations in the [Verizon Complaint] ... do not fall within the insuring agreement as they do not meet the definitions of ... Personal Injury ... as those terms are defined in the policy."

## DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed. R.Civ.P. 56(c)), *cert. denied,* 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour,* 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor." *Barbour,* 63 F.3d at 36.

### B. Duty to Defend

Both parties, and this Court, agree that the duty of Federal Insurance to defend Global NAPs is governed by Massachusetts law. The relevant insurance policy was issued in Massachusetts to Global NAPs, which has a principal place of business is Massachusetts. Accordingly, Massachusetts is the jurisdiction with the "most significant relationship" to the transaction. *Brennan v. Carvel Corp.,* 929 F.2d 801, 806 (1st Cir.1991); *see also Boston Co. Real Estate Counsel, Inc. v. Home Ins. Co.,* 887 F.Supp. 369, 372 (D.Mass. 1995) (applying Massachusetts law to insurance policies negotiated, issued, and performed in Massachusetts).

"In Massachusetts, an insurer's duty to defend an insured is more expansive than its duty to indemnify." *Premier Homes, Inc. v. Lawyers Title Ins. Corp.,* 76 F.Supp.2d 110, 115 (D.Mass.1999) (citations omitted). "An insurer must tread cautiously regarding its duty to defend an insured against third-party actions in view of the expansive interpretation given to that duty." *Rubenstein v. Royal Ins. Co. of America,* 429 Mass. 355, 360 n. 4, 708 N.E.2d 639, 643 n. 4 (1999).

■ The legal theory of the pleader is not what determines an insurer's duty to defend, but instead it is whether the allegations of the complaint lie within "the expectation of protective insurance reasonably generated by the terms of the policy." *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7, 12–13, 545 N.E.2d 1156, 1159 (1989) (quoting *Sterilite Corp. v. Continental Cas. Co.,* 17 Mass.App.Ct. 316, 318, 458 N.E.2d 338 (1983) (citations omitted)); *see Premier Homes, Inc.,* 76 F.Supp.2d at 115 ("[t]he complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." (citations omitted)). The duty to defend an insured against third-party actions arises if, in comparing the policy terms with the third-party complaint, "[t]he allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Liberty Mut. Ins. Co. v. SCA Services, Inc.,* 412 Mass. 330, 332, 588 N.E.2d 1346, 1347 (1992) (quoting *Continental Cas. Co. v. Gilbane, Bldg. Co.,* 391 Mass. 143, 146–147, 461 N.E.2d 209, 212 (1984)).

"The *allegations of the complaint,* not the insurer's belief as to the merits of the complaint, determine an insurer's duty to defend." *Premier Homes, Inc.,* 76 F.Supp.2d at 115 (citations omitted) (emphasis added). "The obligation of the insurer to defend is based not only on the facts alleged in the complaint[ ] but also on the facts that are known or readily knowable by the insurer." *Desrosiers v. Royal Ins. Co. of America,* 393 Mass. 37, 40, 468 N.E.2d 625, 628 (1984). "That some, or even many, of the underlying claims may fall outside coverage does not excuse [the insurer] from its duty to defend these actions." *Simplex Technologies, Inc. v. Liberty Mutual Ins. Co.,* 429 Mass. 196, 198, 706 N.E.2d 1135, 1136 (1999).

Thus, if the allegations in the Verizon complaint are reasonably susceptible of an interpretation that they adumbrate a claim for malicious prosecution under the policy, Federal Insurance has a duty to defend.

## C. Malicious Prosecution

As the parties agree, New York law determines the elements of a malicious prosecution claim because both the initial proceeding (the New York PSC proceeding) and the Verizon complaint were filed in New York. *See Ethicon, Inc. v. Aetna Cas. & Sur. Co.*, 737 F.Supp. 1320, 1332–33 (S.D.N.Y.1990) (holding that appropriate malicious prosecution standard is that of the state in which the underlying action was brought).

■ To establish a claim of malicious prosecution in a civil proceeding where the plaintiff has suffered interference from some provisional remedy, or its substantial equivalent, a plaintiff must demonstrate:

(1) commencement of a judicial proceeding against the plaintiff,

(2) at the insistence of the defendant,

(3) without probable cause,

(4) with malice,

(5) which action was terminated in favor of the plaintiff, and

(6) to the plaintiff's injury.

*Felske v. Bernstein*, 570 N.Y.S.2d 331, 332–333, 173 A.D.2d 677, 678 (N.Y.A.D. 1991) (citing *Berman v. Silver, Forrester & Schisano*, 549 N.Y.S.2d 125, 126, 156 A.D.2d 624, 625 (N.Y.A.D.1989)); *see also* 59 *New York Jurisprudence* (N.Y.Jur.2d) § 48 (2d ed.2002); *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 204–05, 689 N.Y.S.2d 411, 711 N.E.2d 626, 631 (1999) (discussing special injury requirements under New York law).

Strict requirements for all malicious prosecution claims "ensure[ ] that plaintiffs remain relatively free from the threat of retaliatory lawsuits in bringing their good faith claims ... it requires the intentional act of bringing a prosecution in bad faith [which] may be inferred from a want of probable cause or wanton ... disregard of the plaintiff's rights." 59 N.Y.Jur.2d § 48 (2002). "The law [ ] places a heavy burden on malicious prosecution plaintiffs." *Smith–Hunter v. Harvey*, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 734 N.E.2d 750, 752 (2000).

Federal Insurance argues that the Verizon complaint fails to allege sufficient facts to establish two elements of a claim of malicious prosecution: (1) whether the Verizon action terminated in favor of the plaintiff and (2) whether the plaintiff sufficiently pled special injury.

### 1. Withdrawal of One Claim in a Two Claim Proceeding

The threshold question is whether Global NAPs' withdrawal of its claim concerning the disputed number of minutes in the New York PSC proceeding could be properly viewed as a termination in favor of Verizon when the Global NAPs' claim was pressed successfully.

"Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are both drawn." *Restatement (Second) of Torts* § 674(b), cmt. j (1976). Consistent with this principle, New York courts have determined that, in some circumstances, abandonment of a criminal prosecution can constitute a termination in favor of the defendant. *See Smith–Hunter*, 95 N.Y.2d at 196–97, 712 N.Y.S.2d 438, 734 N.E.2d at 753–54 (finding a termination in favor of the plaintiff where there was a dismissal of a criminal

prosecution against him because of prosecutorial inaction); *Gilleran v. Town of Yorktown,* 613 N.Y.S.2d 710, 711, 206 A.D.2d 350, 351 (N.Y.A.D.1994) (involving a criminal prosecution withdrawn in its entirety).

Global NAPs argues that the Verizon complaint adequately alleges termination of a claim in Verizon's favor because Global NAPs withdrew the claim concerning the disputed number of minutes. Federal Insurance responds that the withdrawal of one claim is not a termination in favor of Verizon because it involved only one of two claims in a proceeding. Moreover, it points out that with respect to the withdrawn claim, Global NAPs "continued to press Bell Atlantic for payment" (Verizon Complaint, § 82), and presented evidence that the claim was withdrawn without prejudice.

Under New York law, a civil proceeding does not "finally terminate in a plaintiff's favor" when some of the significant charges are sustained. *See Campion Funeral Home, Inc. v. State* 569 N.Y.S.2d 518, 520, 166 A.D.2d 32, 36 (1991) (holding malicious prosecution claim does not survive where the administrative agency sustained 62 of the 160 administrative disciplinary charges against plaintiff, despite the fact that the "more serious charges were ultimately dismissed."). The *Campion Funeral* court rejected the plaintiff's claim that the charges sustained were "merely technical or innocuous." *Id.* "Normally, the plaintiff in a malicious prosecution action must show that the prior action of which he complains terminated totally, not partially, in his favor." 59 N.Y.Jur.2d § 65 (2002).

Global NAPs points to caselaw from other jurisdictions holding that partial termination in favor of the plaintiff is sufficient to sustain an action for malicious prosecution. *See Bertero v. National General*

*Corp.,* 13 Cal.3d 43, 57, 118 Cal.Rptr. 184, 529 P.2d 608, 618 (1974) (stating there is "no reason for permitting plaintiffs ... to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless."); *Mabie v. Hyatt,* 61 Cal.App.4th 581, 590, 71 Cal. Rptr.2d 657, 663 (1998) (holding "in California[,] coupling a justified charge with an unjustified charge does not shield a party from a malicious prosecution claim on the unjustified charge."); *McQueen v. City of Indianapolis,* 412 N.E.2d 138, 141–42 (Ind. App.1980) (holding probable cause with respect to one criminal offense did not preclude action for malicious prosecution with respect to other offenses).

Other courts have taken a contrary position. *See Stevens v. Redwing,* 146 F.3d 538, 546 (8th Cir.1998) (holding malicious prosecution cannot be maintained under Missouri state law where some petitions were dismissed, but others ultimately ended adverse to the plaintiff's interests); *May v. Fundament,* 444 So.2d 1171, 1171–72 (Fla.Dist.Ct.App.1984) (holding "that if a multi-counted complaint contains one count that has not been filed maliciously, then a malicious prosecution action cannot lie against that complaint."); *Bednarz v. Bednarz,* 27 Mass.App.Ct. 668, 673, 542 N.E.2d 300, 303 (1989) (holding that claim for malicious prosecution failed where "part of [the] claim" was valid).

■ Arguably, under *Campion Funeral,* broadly read, a plaintiff could bring a malicious prosecution action against a defendant that withdrew the significant claims in a proceeding and prevailed only on a minor, technical, or innocuous claim. Here, Global NAPs prevailed on at least one serious, non-technical claim in the administrative proceeding against Verizon. Thus, there is no possibility of recovery for a malicious prosecution claim under New York law. This Court will not take Global

NAPs' invitation to forge new law in this diversity case by following caselaw in other jurisdictions, particularly in light of New York's tough stance on malicious prosecution claims. "Unlike a state court, the federal courts, in diversity cases, are not free to overrule existing state precedent or chart the future course of state law in such manner as we may see fit." *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 17 (1st Cir.1999) (citation omitted); *see Howse v. Zimmer Mfg. Co.*, 757 F.2d 448, 451 (1st Cir.1985) (stating "in diversity cases the federal courts do not undertake to restructure state law").

### 2. Special Injury

■ Federal Insurance asserts that Global NAPs' posited malicious prosecution claim fails on another front as well. New York is among the minority of jurisdictions that follow the "English Rule" concerning damages related to malicious prosecution where the underlying action is civil. *See Campion Funeral*, 569 N.Y.S.2d at 521, 166 A.D.2d at 36. For civil malicious prosecution recovery, "some concomitant invasion of personal or property rights with the institution or prosecution of the prior civil proceeding is required." *Id.* "[T]o insure against retaliatory malicious prosecution claims and unending litigation," pleading a special injury is required under New York law to sustain an action for malicious prosecution. *Engel*, 93 N.Y.2d at 206, 711 N.E.2d at 632 (rejecting a claim by an attorney that the underlying action caused a special injury because of possible conflicts of interest with his client even where the underlying suit was brought in bad faith). Although New York has not strictly limited special injury to the imposition of provisional remedies (like the attachment of property), to establish special injury, "the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Id.* at 205, 689 N.Y.S.2d 411, 711 N.E.2d at 631. Rather, "[a] highly substantial and identifiable interference with person, property, or business will suffice." *Id.* "[B]urdens substantially equivalent to those imposed by provisional remedies are enough." *Id.*

■ New York courts have found several types of special injuries. *See Dudick v. Gulyas*, 716 N.Y.S.2d 407, 410, 277 A.D.2d 686, 688 (2000) (finding special injury in chiropractor's loss of business resulting from the defendant's initiation of a disciplinary hearing); *Honzawa v. Honzawa*, 701 N.Y.S.2d 411, 413, 268 A.D.2d 327, 329 (2000) (finding special injury traced to the attachment of plaintiff's bank accounts). But, legal expenses and injury to reputation have been held to be inherent to lawsuits and, thus, not special injuries. *See Campion Funeral*, 569 N.Y.S.2d at 521, 166 A.D.2d at 37.

■ Global NAPs contends that special damages are adequately pleaded in the Verizon complaint because the complaint alleges that the New York PSC proceeding both prevented Verizon's discovery of Global NAPs' allegedly fraudulent behavior and extended the period during which the alleged fraud was committed. This contention does not pass muster in regard to a claim for special damages.

To support a claim for malicious prosecution, the Verizon complaint must allege "highly substantial and identifiable" monetary damages caused by the cover-up itself. *Engel*, 93 N.Y.2d at 205, 689 N.Y.S.2d 411, 711 N.E.2d at 631. Verizon's complaint alleges that Global NAPs' "intent" was to conceal the fraud so that it could continue to collect reciprocal compensation while the dispute dragged on. (¶ 131). It does not allege, however, that Global NAPs succeeded. Moreover, Glob-

al NAPs withdrew its claim regarding unpaid minutes prior to the termination of the full proceeding. Although the Verizon complaint alleges that Global NAPs continued to press for payment, the complaint also alleges that it could not document its claims. (¶ 82). Thus, the complaint contains no allegation suggesting the cover up itself caused substantial monetary damages, apart from legal fees. To the contrary, the Verizon complaint is fairly read to allege that Verizon refused to pay for the phantom MOUs before the initiation of the PSC proceeding and persisted in this refusal. (¶¶ 59, 82–83).

In conclusion, the Verizon complaint does not contain allegations suggesting a favorable termination of the New York PSC action, under New York's definition of favorable termination. Neither does the complaint suggest special damages from Global NAPs' actions. As a result, the Verizon complaint is not reasonably susceptible of an interpretation that it adumbrates a malicious prosecution claim. Federal Insurance, therefore, did not have a duty to defend Global NAPs in this case.

### ORDER

For the foregoing reasons, it is hereby **ORDERED:**

1. Defendant's Motion for Summary Judgment (Docket No. 19) is **ALLOWED.**

2. Plaintiffs' Cross–Motion for Partial Summary Judgment on Count II (declaratory judgment) (Docket No. 23) is **DENIED.**