**Audrey JACQUES, Plaintiff,**

v.

**DiMARZIO, INC., Defendant.**

**Case No. 97–CV–2884(FB).**

United States District Court,
E.D. New York.

Aug. 23, 2002.

Lisa Sirkin, Minna Kotkin, Stephen Meyer, Legal Intern, Harmon Fields, Legal Intern, BLS Legal Services Corp., Brooklyn, NY, for Plaintiff.

Gary Ettelman, Ettelman & Hochheiser, P.C., Garden City, NY, for Defendant.

### *MEMORANDUM & ORDER*

BLOCK, District Judge.

In *Jacques v. DiMarzio,* 200 F.Supp.2d 151, 162 (E.D.N.Y.2002), the Court denied defendant's motion for summary judgment on plaintiff's federal claim under the Americans with Disabilities Act ("ADA"), holding that there was a genuine issue of material fact as to whether the plaintiff was perceived as disabled from interacting with others. *See id.* at 161. In doing so, the Court ruled that "the ability to 'interact with others' is a major life activity" under the ADA. *Id.* at 160. The Court

also denied summary judgment as to the plaintiff's state whistle blower claim under New York Labor Law § 215, holding that "there exists an issue of material fact as to whether [the plaintiff's] labor law complaints were a motivating factor in her discharge." *Id.* at 162.[1]  In addition, the Court *sua sponte* questioned the viability of defendant's counterclaim, characterizing it as an apparent "naked form of retaliation against Jacques, a vulnerable plaintiff who suffers from a significant mental impairment, for filing her lawsuit." *Id.* The Court afforded defendant's counsel "the opportunity to submit legal authority and evidence to justify [the] counterclaim, if it can, and to explain why Rule 11 sanctions should not be imposed." *Id.; see Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141 n. 2 (2d Cir.2002) ("A district court can award sanctions absent a motion from a party. But if a district court determines that sanctions are appropriate, the court must allow the party threatened with sanctions to respond.").  Defendant's counsel has availed himself of that opportunity;  he has submitted a memorandum in which he argues that the counterclaim pled "colorable claims sounding in abuse of process, malicious prosecution and *prima facie* tort under New York Law." Def.'s Mem. at 2. He argues, in any event, that sanctions are not appropriate because:

> 1) the counterclaims[2] are not frivolous, 2) do not relate to Jacques' filing this lawsuit, 3) seek damages for Jacques' repeated actions before numerous administrative agencies, 4) there is evidence of improper motive for Jacques' [filing of] those actions, 5) Jacques' actions disrupted DiMarzio's business, 6) DiMarzio reduced the damages it sought on its counterclaim from $500,000 to

$50,000, strongly negating any inference that the counterclaim · was brought to harass Jacques, 7) the court granted summary judgment on [some of the] claims filed by plaintiff, and 8) in no way has the assertion of the counterclaim delayed this action or caused Jacques to incur any additional costs or expenditures.

Def.'s Mem at 13–14.

Defendant has simultaneously moved, pursuant to 28 U.S.C. § 1292(b), for certification to appeal from that part of the Court's order denying defendant's motion to dismiss the federal ADA claim as a consequence of its ruling that "the ability to 'interact with others' is a major life activity." *Jacques*, 200 F.Supp.2d at 160.

## I.  The Counterclaim

■  In its entirety, the counterclaim, in both its original and amended versions, alleges that the plaintiff had filed two administrative claims "for the sole purpose of harassing defendant, interfering with and damaging defendant's business operations, interfering with employee morale, creating employee unrest and impugning defendant's reputation."  Answer at ¶ 22; Am. Answer at ¶ 26.  One claim was filed with the National Labor Relations Board "accusing defendant of terminating [her] employment as a result of 'her engagement in protected and concerted activities[;]'" the other was filed with the Equal Employment Opportunity Commission and the New York State Division of Human Rights based on "discrimination due to an alleged disability in violation of the[ADA]."  Answer at ¶¶ 14, 21;  Am. Answer at ¶¶ 18, 25.  The counterclaim originally sought $500,000 in damages.  *See* Answer at ¶ 23.

**1.**  Although now represented by the BLS Legal Services Corp., a clinic associated with the Brooklyn Law School, plaintiff brought her lawsuit *pro se.*

**2.**  Defendant's counsel apparently views each of his three "colorable claims" to be separate counterclaims, even though he has pled only one counterclaim.

It was reduced in the amended answer, filed approximately one year later, to $50,000. *See* Am. Answer at ¶ 27.[3]

Contrary to defendant's counsel's contention, the counterclaim is utterly devoid of factual allegations to raise a colorable claim under New York law for abuse of process, malicious prosecution or *prima facie* tort.

■ "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). A party "must allege and prove actual or special damages in order to recover." *Board of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Assoc., Inc.*, 38 N.Y.2d 397, 405, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Special damages are "burdens imposed on [a party] beyond the ordinary burden of defending a law suit." *Engel v. CBS, Inc.*, 145 F.3d 499, 503 (2d Cir.1998)(internal quotation marks omitted).

■ "The elements of the tort of malicious prosecution include initiation or continuation of a proceeding despite the lack of probable cause, termination of that proceeding favorable to the party there sued and now aggrieved as plaintiff, and a showing of malice in the pursuit of that underlying proceeding." *Honzawa v. Honzawa*, 268 A.D.2d 327, 701 N.Y.S.2d 411, 413 (1st Dep't 2000). As with the tort of abuse of process, special damages are required. *See id.*

■ A *prima facie* tort consists of four elements: "(1) intentional infliction of harm, (2) causing special damages, (3)

without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Curiano*, 63 N.Y.2d at 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324. New York courts have held that parties "should not be able to plead *prima facie* tort in the alternative. It should not become a catch all alternative for every cause of action [that] cannot stand on its legs." *Id.* at 118, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (finding claim for *prima facie* tort meritless because "by using it, plaintiffs seek to avoid the stringent requirements we have set for traditional torts, such as malicious prosecution [.]").

Defendant's cryptic, generalized, and ill-defined conclusory claim of harassment cannot serve as a substitute for pleading the requisite elements of these causes of actions; accordingly, the counterclaim is dismissed.

## II. Rule 11 Sanctions

Rule 11 provides that an attorney makes the following representations each time he or she submits a paper to the court: (1) the paper is not being presented for an improper purpose; (2) the legal claims are warranted under existing law or pursuant to a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for discovery; and (4) denials of factual contentions are warranted. *Martens v. Thomann*, 273 F.3d 159, 177 (2d Cir.2001).

■ "A pleading, motion or other paper violates Rule 11 either when it 'has been interposed for any improper purpose [Fed.

---

**3.** The Court's prior decision in *Jacques* addressed only the original answer. *See* *Jacques*, 200 F.Supp.2d at 162–63.

R.Civ.P. 11(b)(1)], or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law [Fed.R.Civ.P. 11(b)(2)].'" *Kropelnicki v. Siegel,* 290 F.3d 118, 131 (2d Cir.2002). Compliance is measured by an objective standard: Rule 11 is violated "where it is patently clear that a claim has absolutely no chance of success." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

Pursuant to Rule 11, a court may "impose an appropriate sanction upon the attorneys ... that have violated [Rule 11] or are responsible for the violation." Fed. R.Civ.P. 11(c).[4] "[W]here sanctions are imposed ... by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,* 174 F.3d 87, 94 (2d Cir.1999) (quoting *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 152 n. 3 (7th Cir.1996)) (citation omitted; internal quotation marks omitted); *see also Thornton v. General Motors Corp.,* 136

F.3d 450, 455 (5th Cir.1998) ("[W]here sanctions are imposed ... by a district court on its own initiative, ... the award of attorney's fees ... [does not] constitute a valid sanction.") (citation omitted; internal quotation marks omitted).

■ Since defendant's counterclaim is patently devoid of allegations rising to a colorable claim for any of the tort theories that defendant's counsel has belatedly conjured in an attempt to avoid Rule 11 sanctions, such sanctions are clearly warranted for this frivolous pleading. *See W.K. Webster & Co. v. Am. President Lines, Ltd.,* 32 F.3d 665, 670 (finding sanctions warranted where counterclaims were "patently void of any legal or factual basis" and defendant's counsel did not "ma[ke] plausible arguments" to support them).

This conclusion is bolstered by defendant's counsel's failure to offer any evidence to support defendant's claimed damages or any factual bases for his other conclusory assertions. All defendant's counsel has submitted is his memorandum; he has not submitted any affidavit from the defendant or any evidentiary material in support of special damages,[5] or, for that

---

4. While Rule 11 also permits sanctions against a represented party, nothing in the record suggests that sanctions should be imposed on DiMarzio. *See, e.g., Calloway v. Marvel Entm't Group,* 854 F.2d 1452, 1474 (2d Cir.1988) (noting that a court may sanction a represented party if the party "had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose"), *rev'd on other grounds sub nom, Pavelic & LeFlore v. Marvel Entm't Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Notably, monetary sanctions may not be awarded against a represented party for a violation of Rule 11's requirement that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law. *See Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 142 n. 3 (2d Cir.2002).

5. Regarding abuse of process, malicious prosecution and *prima facie* tort, defendant's counsel argues that the New York view requiring special damages "is the minority position, which should be abandoned [.]" Def.'s Mem. at 12. The argument is frivolous; New York law is firmly established that special damages are required for these claims. *See Engel v. CBS, Inc.,* 145 F.3d 499, 502 (2d Cir.1998); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985); *Curiano,* 63 N.Y.2d at 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324; *cf. Gurary v. Winehouse,* 235 F.3d 792, 798 (2d Cir.2000) (citation omitted), *cert. denied,* —— U.S. ——, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001) (noting that under Rule 11 an attorney should not argue for a change of the law "when it is clear under existing precedents that [the argument has] no chance of success and [there exists] no reasonable argument to ... modify or reverse the law as it stands").

matter, any other aspect of his three theories. Although the *ad damnum* clause was amended from $500,000 to $50,000, the *in terrorem* effect of the initial half million dollars lingered for about a year; indeed, Rule 11 sanctions have been imposed even when parties voluntarily withdrew frivolous claims. *See Fischer v. Samuel Montagu, Inc.*, 125 F.R.D. 391, 394–95 (S.D.N.Y.1989); *Shokai Far East Ltd. v. Energy Conservation Sys., Inc.*, 628 F.Supp. 1462, 1467 (S.D.N.Y.1986).

In addition, defendant's counsel's attempt to justify the counterclaim by arguing that it was warranted by plaintiff's "repeated actions before numerous administrative agencies" reinforces the frivolousness of the counterclaim. Def.'s Mem. at 13. The two administrative claims hardly bespeak of "repeated actions." To the contrary, they simply served as predicates for the subject litigation. Notably, in respect to the ADA claim, defendant's counsel should have known the basic principle of law that as a precondition to initiating a federal discrimination lawsuit, plaintiff was required to exhaust her administrative remedies, and that failure to do so would be fatal to her case. *See Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply."); *see also Joseph v. America Works, Inc.*, 2002 WL 1033833, at * 5 (S.D.N.Y. May 21, 2002) (claimant must exhaust administrative remedies before bringing ADA claim in federal court). As for her state whistle blower claim, which may not require exhaustion, plaintiff cannot be faulted for seeking relief before the NLRB as a means to avoid litigation; moreover, it is not at all uncommon for a claimant to be unsuccessful at the administrative level and, as in the present case, to be successful at the judicial level. That plaintiff was not successful in her administrative pursuits should not chill her right to come to court for fear of being subjected to a retaliatory counterclaim.

In sum, given the plaintiff's labile emotional condition and her initial *pro se* status, the factually unsupported, conclusory lay nature of the counterclaim can only realistically be viewed, as suspected by the Court in its prior decision, as a bad faith retaliatory *in terrorem* tactic against the plaintiff for bringing her claims to court. This conduct constitutes "the type of abuse of the adversary system that Rule 11 was designed to guard against." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990). The Court reiterates its admonition to the practicing bar "against asserting baseless, retaliatory counterclaims." *Jacques*, 200 F.Supp.2d at 163.

As for the sanction, the Court believes that $1,000 is sufficient to punish defendant's counsel and to deter this type of conduct in the future. *See Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir.2000) ("Rule 11(c)(2) limits the sanctions that may be imposed for a violation of Rule 11 'to what is sufficient to deter repetition of [the wrongful] conduct or comparable conduct by others similarly situated[.]' "); *cf. Gambello v. Time Warner Communications, Inc.*, 186 F.Supp.2d 209, 230 (E.D.N.Y.2002) (imposing $1,000 sanction on attorney for presenting frivolous claim); *Four Star Fin. Serv., LLC v. Commonwealth Mgmt. Assoc.*, 166 F.Supp.2d 805, 810 (S.D.N.Y.2001) ($2,500 sanction imposed on attorneys for filing claims lacking "evidentiary support"); *Perry v. S.Z. Restaurant Corp.*, 45 F.Supp.2d 272, 276 (S.D.N.Y.1999) ($2,500 sanction imposed on attorney for filing frivolous claim); *De Ponce v. Buxbaum*, No. 90 Civ. 6344, 1995 WL 92324, at * 2 (S.D.N.Y. March 7, 1995) ($2,000 sanction imposed on attorney for answer to interrogatory "interposed for

[the] improper purpose" of "caus[ing] unnecessary delay or needless increase in the cost of litigation.") (internal quotation marks omitted).

## III. The Certification Motion

█ It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). As an exception to this rule, a district court may certify an interlocutory order for appeal if the order "[1] involves a controlling question of law, [2] as to which there is a substantial ground for difference of opinion, and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Such certification "vests review of an interlocutory order within [the circuit court's] discretion and [the circuit] may decline at any time to decide the issue presented." *Koehler*, 101 F.3d at 866.

█ Only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *see Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990). A district court is to "exercise great care in making § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992). Section 1292(b) was not intended to be a "vehicle to provide early review of difficult rulings in hard cases." *German v. Fed. Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995). Nor was it intended "to substitute an appellate court's judgment for that of the trial court." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir.1996). District courts retain "unfettered discretion to deny certification" even when the criteria of § 1292(b) appear to be satisfied. *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 162–63 (E.D.N.Y.1999).

█ Reversal of the Court's holding on the challenged ADA issue would not necessarily lead to dismissal of the action since, in the circumstances of this case, the Court would, in the exercise of its discretion, retain jurisdiction over plaintiff's state claim. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996) (noting that district court has discretion to exercise supplemental jurisdiction over state law claims even where it has dismissed all federal claims). Thus, an "immediate appeal ... [would not] materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Furthermore, a final judgment is likely to materialize in the near future since discovery is complete and the case is ripe for trial.

Even though there may be substantial grounds for differences of opinion as to whether the ability to interact with others is a major life activity, and the Second Circuit has yet to address the issue, the Court, nonetheless, in consideration of the relevant factors and in the exercise of its discretion, denies defendant's motion for certification.

## CONCLUSION

The Counterclaim is dismissed. Defendant's counsel shall pay $1,000 to the Clerk of the Court within ten (10) days for the Rule 11 violation and shall forthwith notify the Court when such payment has been made. Defendant's motion for certification is denied.

**SO ORDERED.**